Good morning, your honor. Kenneth White appearing for Mr. Abu-Sam, who is currently serving his sentence in this matter. If it pleases the court, I'd like to speak for ten minutes and reserve five minutes for a rebuttal of the government. And I would like to begin by addressing the supplemental authority submitted by the government. Just one second. Judge Gold, are you – welcome – and are you – can you hear everything and is everything all right from your end? I can – I can hear fine. Everything is proceeding smoothly here. All right, great. I just want to make sure. And, yes, you may have your five minutes. Thank you, your honor. I would like to begin by addressing the supplemental authority that the government submitted last week, the case United States v. Sedano Arellano. The government submitted that case for the proposition that harmless error analysis can apply to a case like this, where there is a conditional plea of evidence that excluded that the defendant wanted to admit a trial. In fact, Sedano does not stand for that proposition at all. Sedano involved the conditional plea with respect to a motion to suppress. In that case, what this Court found was that error was harmless because the additional information, even if it had been provided to the defense, would not have made a difference as to the determination of reasonable suspicion and probable cause at the motion to suppress stage. In other words, the information went into a framework of information that was already complete. A motion to suppress it had been briefed by both sides. By contrast, here we have evidence that has been excluded, that is now appealed, that would have gone in a trial at which we don't know what would have happened. The government argues that the Court can rely on its characterizations of what the evidence at trial would have shown based on its sentencing pleadings. But, of course, the Federal rules of evidence don't even apply at sentencing. The standard for admission of evidence is much lower, and it is pure speculation as to what would have actually happened at trial. If the Court permits harmless error analysis to apply in this context, when the question is evidence that's been excluded for trial, then the government's always going to be able to show harmless error because it's always going to be able to make the record based on its generous interpretation of what it would have been able to prove at trial, something that is never actually tested. Moving on, Your Honor, I'd like to address the issue of the exclusion of the expert testimony. The issue at hand was framed incorrectly by the government's motion, and ultimately, with all respect to the district court, by the district court. The government framed it as whether or not the district court should allow the defense to argue that Mr. Al-Busam was not bound by Federal regulations regarding the practice of medicine. But that wasn't the issue that the defendant wanted to present, and that is not the proposed testimony from the defense expert. In fact... As I understand, what he wanted to present was evidence that just simply being an addict was you could legitimately prescribe certain forms of narcotics. Not exactly, Your Honor. Not that if one is just an addict that regulations permit that. Rather, that there is a belief in the medical community that there is a legitimate community of doctors who believe that that is legitimate treatment. And therefore, the inference would have been Dr. Al-Busam could have legitimately believed that the treatment he was engaged in was within the bounds of legitimate medical practice. The expert's proposed testimony explicitly disclaimed any statement about what the law was. In fact, it explicitly disclaimed saying that doing this should be without consequence. In fact, it conceded that doctors can face consequences for violating regulations. The question has always been, what is the consequence? Is it a criminal consequence that we impose only when there is an intent to practice outside the bounds of legitimate medical practice? Or is there a regulatory or other consequence when someone violated the regulations created by the federal government? Our argument is that, especially in light of Feingold that the district court erred in not allowing this testimony, which went so directly to Dr. Al-Busam's intent, whether or not he could have legitimately intended to be within the bounds of legitimate medical practice. Counsel, if I could ask you a question because of your reliance on Feingold. How do you deal with footnote 2 of Feingold where it says we don't suggest that the federal government lacks authority to circumscribe the scope of treatment that might plausibly be considered, you know, within the usual course of professional practice? I would deal with it in three ways. The first way was I would submit that footnote number 2 has to be read together with footnote number 1, which explicitly talks about the use of expert testimony to create a dispute about what doctors believe is legitimate. Number 2, I would submit that there is a distinction between the government making a decision about what is or isn't legitimate scope of medical practice and what doctors believe and what a doctor might have intent to do. In other words, even if the government decides this is outside the scope of legitimate medical practice, the question is did this doctor intend to practice outside that scope? And that question that the government has to prove beyond a reasonable doubt is informed in part by the community in which the doctor practices. What the government's argument and interpretation of this is in effect reads the intent element out of the crime in cases where the government has decided that something is not medically legitimate. It creates something very akin to strict liability where if you do X and the government has decided that X is not medically legitimate, therefore by definition you intended to violate the scope of legitimate medical practice. But there's nothing in the cases to support such a dramatic shift away from the main message of Feingold, which is the government always has to prove that the defendant had an intent to practice outside legitimate scope of medical practice. In addition, Your Honor, I would submit the record in this case illustrates why a defendant should still be able to introduce evidence as to whether or not he intended to be outside the scope of medical practice and whether there are doctors who would agree. That is that, as the record shows, the government was going to introduce experts at trial for the proposition that the defendant testified outside the bounds of legitimate medical practice. Now if the government's argument is correct, that the end of the analysis is the proposition that the defendant thought that he was treating addiction, then there would be no need for the government to present an expert. And yet the government offered to. That was part of the issue in the motion practice on the motion to eliminate. Your Honor, this interpretation of Feingold is supported, for instance, by Hurwitz, the Fourth Circuit case, and by other circuits that have repeatedly said that expert testimony is a legitimate way to establish good faith to rebut the government's lack of good faith and to create a factual basis on which a jury can determine whether or not the government has proved that the doctor intended to practice outside the scope of legitimate medical practice. Your Honor, beyond that, I would like to speak briefly regarding the sentence before I reserve some time. With respect to the sentence, there's no question, and I'm not arguing, that the court has broad discretion. But sometimes, as this court has found, a court can reach a definite and firm conviction that the district court committed a clear error of judgment. There was one such here because of the undue weight the district court placed repeatedly on this stale medical board proceeding. And the district court did that, the record shows, in three ways. First, by citing it as something showing that Dr. Albusom had a serious record. Second, by citing it for the proposition that the district court shouldn't give much weight to his medical service in support of cancer patients. And third, in creating this notion that because of this stale medical board proceeding, Dr. Albusom should have been on what the district court called his best behavior. Did the district court have the terms of the settlement before him? Yes, Your Honor. It's part of the record. Both the accusation and the settlement are in the excerpts of record. The reason that was error, Your Honor, that reaches the point of a clear error in judgment is that it wound up deriving the sentence by looking at something based on 20-year-old conduct and, at that point, a 13-year-old medical board proceeding and relying on things that were accused but were not ultimately admitted by Dr. Albusom, particularly in light of a man who was 72 years old in very poor health with no criminal record, who was the sole support of an ill wife and who was facing dramatic consequences already, including the loss of his medical license, forfeiture of hundreds of thousands of dollars, and the consequences of a felony conviction. It was far more than was necessary. It was not sufficient but not greater than necessary as required by 3553A. And unless the Court has questions, I'd like to reserve some time to rebut. Thank you. Good morning. May it please the Court. Ariel Newman for the Government of the United States. The issue in this case is whether the defendant had the intent to violate a or, excuse me, the intent to distribute the drugs outside the course of professional practice and without a legitimate medical purpose. The government had to prove that under Feingold. In most cases, what that legitimate medical practice is and what that course of usual practice is would be determined by the community of doctors, perhaps by the state in certain cases, but in this particular case, that is determined by Congress acting through the Secretary for the Department of Health and Human Services. As Gonzalez recognized, as Feingold recognized, as Hayes recognized, this is the only area that anybody seems to know of where Congress has actually delegated to a secretary, the Secretary of Health and Human Services, the decision to decide what is the course of usual practice, what is a legitimate medical purpose when a doctor is issuing a prescription. So while it certainly is important for the government to prove the defendant's intent, if the defendant had intended to treat addiction. Well, I mean, certainly important, it's an element of the crime. The government must prove that beyond a reasonable doubt. Of course. So the government has to prove that he intended to act outside the course of usual practice and without a legitimate medical purpose, Your Honor. Okay. Then why isn't his expert doctor's testimony relevant to assessing that question? Because in this, well, first of all, as Hurwitz, this case cited by the defense, and Vamos out of the Second Circuit, and a number of other cases have recognized, what that course of professional conduct is, is an objective question. Hurwitz uses the language that a defendant doctor can't substitute his own idiosyncratic view of what it is. Right. But the expert testimony was what the community viewed as a legitimate medical purpose. Well, in this particular case, what the community view is, if that in fact was the evidence in the record that the doctor purported expert was going to say that he actually didn't do this and he didn't know anybody who did, defense counsel at the time conceded that. But if that was the community view, Congress in this case has taken it, taken that question out of the hands of the doctors and has taken that question out of the hands of the state. In this particular case, the treatment of narcotic addicts and what narcotic drugs may be prescribed to treat that addiction, Congress has defined the scope through the Secretary of Health and Human Services. They've defined the scope of what legitimate medical practice is. So in that sense. When you say in this particular case, are you saying because it is the prescription of narcotic drugs? I'm sorry. In the particular case of treatment of narcotic addiction through the prescription of controlled substances, specifically. In this case, if we basically follow through the statute starting at Title 42 USC 290BB-2A, there the Congress says that the Secretary of Health and Human Services shall determine the appropriate method of professional practice in the medical treatment of the narcotic addiction of various classes of narcotic addicts. So that's where we start. We then go to 42 CFR Section 8.12H2, which is the regulation that the Secretary of Health and Human Services has enacted. And that says that there's only three types of medications that can be prescribed to treat addiction. Those are methadone, levomethadil acetate, and buprenorphine. Excuse my pronunciations. But those are the only three. It is not, it is per se, outside the course of the usual practice, and it is per se without a legitimate medical purpose, to prescribe these drugs to treat addiction. If the doctor had wanted to put on an expert to say, I was, and this was the case in Hurwitz, that he prescribed in Hurwitz, the defendant doctor prescribed a very large amount of these narcotic substances, and his defense was, well, that was an appropriate treatment for pain. Nothing about addiction, but for pain. In that case, this kind of battle of the experts, let's say, would be appropriate. Because there you don't have Congress saying the course of medical practice for the treatment of pain is X. So you need an expert to tell you what it is within the community. Here, however, you have a very clear objective rule enacted by Congress through the Department of Health and Human Services of what that treatment is. And so for those reasons, the district court didn't abuse its discretion in excluding expert testimony. In fact, if we go back to Hayes, which is really the controlling case here, in Hayes, it was very clear that if, it makes it clear, that if the defendant in this case had testified that he was prescribing these drugs in an effort to treat The government would have been entitled to an instruction that that type of prescription was without, was not issued in good faith. That is, the proper statement of law from Hayes is that if a patient were a narcotic addict, and the only medical complaint was addiction or withdrawal, the defendant could not have issued the drugs in good faith. And that's really, at the end of the day, was binding on the district court as an I agree that Hayes does seem to say that. But isn't it at all troubling that he couldn't put on expert to say that this was legitimate, I mean, that the government would exclude that as a matter of law? I mean, it seems troubling to me that the jury just wouldn't be able to hear that testimony. Well, the doctor's testimony, and I think it's clear from the record, the doctor defendant was given full reign, in the words of the district court, to testify as to his intent, what he was thinking, what he was doing, everything. What he wasn't allowed to do was put on an expert or purported expert to say the court, the course of professional practice includes prescribing these drugs for the purpose of treating addiction. And he wasn't allowed to do that because the Congress, basically in the Controlled Substances Act, has said no. Through the Department of Health and Human Services has said no, that is outside the course of professional practice. If a doctor is prescribing these drugs to try to treat addiction, he is not acting in good faith. That's the whole thing in Hayes. And that's where it comes from. And your undercover agent just simply said he was an addict or withdrawing and didn't say add anything else. Some of them didn't even say they were an addict. It's clear from the record, some of them came in and said, the doctor would say, what's wrong with you? Nothing. The doctor would say, well, you have a backache, right? He would suggest or coach them into supposed reasons. And that's, I think, part of where we get into the harmless error analysis is that I actually don't think the court needs to reach that, obviously. I think that the law is quite clear that the district court was correct. But there's absolutely no evidence in the record that this doctor defendant was trying to treat addiction. In fact, it's exactly the opposite. He was feeding addiction. That's clear from the record. And he was trying to hide that by claiming in his files that he falsified for the information that wasn't anywhere on the recordings, that these people had backaches, that they had chronic work injuries. All of the information that he put into those files was about pain treatment, nothing about addiction treatment. There was never a suggestion that he was trying to refer them out for addiction therapy, never a suggestion that he was trying to lessen the drugs they were taking. In fact, it was the very opposite. He would suggest additional narcotic drugs for them to take. He would suggest additional addictive drugs for them to take, for which they hadn't made any requests and for which there was no indication at all that they needed. So did the district court rely too heavily on the accusations in the medical board settlement in sentencing a 72-year-old man to four years of incarceration? I would suggest to the court that it barely relied on that. In essence, if we go back to the sentencing hearing, the district court said at the end of the day the point is that he was on the warning to be on his best behavior. And that warning, his probation ended in 2001. This conduct was in 2009 and 2010. But he goes on and on about it and says even though he recognizes that the board dropped most of the allegations, he still relies very heavily on those accusations. Well, Your Honor, if I may, I think that that is part of the discussion. It was a very long part of the discussion. But if we go through it, the district court also made a number of findings about just how egregious this behavior was in this case. First of all, I should note the sentence imposed is only six months above the guidelines that the court found appropriate. And those guidelines, as the court itself noted, were very lenient. Basically, the district court found on the record that the defendant doctor had been prescribing to tens of patients, up to 30 patients a day, illegitimate prescriptions, taking home $3,000 to $3,500 in cash every day, that this went on for a period of two years. And basically, instead of trying to find a way to quantify that in an offense level, the district court said, okay, I'm going to draw all inferences in favor of the defendant, and I'm only going to count the ones, the prescriptions that were issued to the undercover officers. So the doctor defendant ended up with a base offense level of 22, which the district court itself said was a very lenient calculation. So under the circumstances, the sentence imposed at the end of the day is very reasonable and was not an abuse of discretion. This was a person who was a leader of a conspiracy involving five or more participants. He breached his position of trust. And as the court noted, he wasn't, quote, the average drug dealer. This is a person who had education, opportunity, and options. And in the court's words, district court's words, was acting only for sheer greed. So given that the court drew all those inferences in favor of the defendant, if it had been relying too heavily on that prior medical board proceeding, I think the suggestion would be that it would have gone much higher in the sentence that was imposed. What was the sentence that the government had asked for? The government asked for a 235-month sentence. And the district court wasn't willing to grant that. And that was based on a calculation, a base offense level of 30. The district court applied a base offense level of 22. It was based on a base offense level of 30, based on an extrapolation from various data of the doctor's prescriptions and information that came from a cooperating witness who had worked for the doctor in his office and had seen every prescription going out the door. And that's how the government got to a, well, first a base offense level of 34, and as a kind of a fallback position, a base offense level of 30. But it was a 235-month sentence. The base offense levels were based on the total number of prescriptions, right? I'm sorry? Not just the one. Weren't the government's base levels based on the total prescriptions that they, the total amount of drugs they thought were being prescribed not just to the undercover agents? Yes, the total amount of prescribed drugs that were being prescribed without a legitimate medical purpose. Yes, that's correct. And the district court decided not to include those in its calculation and, as you note, just included the drugs that were prescribed only to the undercover agents on those nine specific dates that were the subject of the investigation. Okay. Thank you. Unless the panel has any other questions, I will submit. No, I don't. Thank you. Thank you. No questions. Thank you. May it please the Court, I'll be brief. I would start with the sentencing issue first since that was last. Your Honor, a sentence is not lenient when the district court finds that the evidence was insufficient to give what the government was asking for. And that's what the district court here found explicitly, pages 24 and 25 of the transcript, that the government had not submitted sufficient evidence to support its drug calculation. And so that's not leniency. That's simply applying the standard to the evidence. Your Honor, and with respect to what the court said, it was actually an eight-year sentence, not a four-year sentence. It was 84 months upon this gentleman. Isn't that seven years? Eighty-four months divided by 12 is seven. You're right, Your Honor. I misspoke. Seven. Nobody here can do division. That's why I went to law school and not to engineering. That's why we all went to law school. I've been away from those tables for a while. I took physics for poets, Your Honor, I must confess. Going back to the issue of the expert testimony, one thing that's important to recognize is that the district court said repeatedly and explicitly that the proposed expert testimony was relevant, which cuts against the government's argument that it's not relevant, that it was relevant to his intent. What the district court said was that it was unduly prejudicial because it might mislead the jury. But what the government's never been able to explain is why the district court couldn't have addressed that supposed prejudice and allowed this important evidence that went to intent with a limiting instruction. Like members of the jury, you may only consider this testimony as it goes to the doctor's intent. This expert does not tell you what the law is. I tell you what the law is. And, in fact, the law is that this is not a legitimate medical purpose as defined by law. You can only consider this as to whether or not Dr. Al-Busam had intent to go outside the legitimate medical purpose. Did you ask for a limiting instruction? Your Honor, I was not trial counsel. Trial counsel, I believe, during the in limine discussion mentioned at one point a limiting instruction as a possible way to address prejudice, if memory serves. How do we get error if they don't offer the instruction? Well, Your Honor, because it was only at a pretrial in limine phase, it's not a situation where we were at the jury instruction phase and the counsel below failed to offer instruction in question. Rather, the issue is just whether the evidence should have been excluded in the first instance. And since it was, the jury instruction wasn't yet relevant. Indeed, when the court made its prejudice point, when it ruled that the reason it was excluding this was because of prejudice and articulated that in an order, Dr. Al-Busam had already entered his conditional guilty plea. In other words, the court made its ruling, Dr. Al-Busam entered his conditional plea, and then the court issued its ruling. Counsel, that sounds like a strategic decision made by counsel. I respectfully disagree, Your Honor. Well, the conditional guilty plea is certainly. That's what I'm talking about. That's certainly a strategic decision, Your Honor, but it properly preserved the issue. Well, it only preserved the record as it existed at that point. It didn't preserve a record yet to be created. That's true, Your Honor. What I'm saying is that counsel could not have addressed an argument the court made in its ruling that it hadn't issued yet. So the other thing I would point out again is that the government has conceded that the trial court said that Dr. Al-Busam himself could have testified about his intent, but it's not clear why that would be different than an expert offering carefully limited by instructions testimony. In other words, if it's relevant for Dr. Al-Busam to talk about his understanding of the community standard of medical practice, why isn't it also relevant for an expert to do so? Finally, Your Honors, the government still hasn't explained why its own expert would have been relevant or non-prejudicial if it's arguing that the defense's was not. Once again, if you look at Exeter Record page 232, which is where the defendant below pointed out that the government was offering an expert to testify that this was outside the scope of medical practice, why, if the government can do that, can't the defendant respond? That cuts directly against the finding and goes to the fundamental constitutional nature of a defendant's right to present his defense. All right. Thank you very much, Counsel. United States v. Al-Busam is submitted.
judges: Haddon, Wardlaw, Gould